## FOSTER *v.* CHESAPEAKE & N. RY. Co. *et al.*

*(Circuit Court, M. D. Tennessee.* September 2, 1891.)

REMOVAL OF CAUSES—SEPARABLE CONTROVERSY.

A county, under authority of law, subscribed to the capital stock of a railroad company, which subsequently became insolvent. A new company was organized, which bought the franchises and property of the old company, and the county, as a stockholder, joined in the transfer upon the understanding that the purchasing company should complete a continuous line between certain points within 18 months. For such transfer the county was to receive a certain amount of the capital stock of the new company, to be issued "when all liens on the property and rights conveyed" had been discharged. Afterwards, on June 15, 1885, and July 28, 1887, the new company executed its first and second mortgages, and contracted with a construction company to build its road, and accept payment in bonds. On September 29, 1887, the county filed its bill in the state court, alleging that the new company had failed to issue capital stock to it as agreed; that it had failed to complete the line within 18 months; that the county had no authority to transfer to it the stock of the old company without a previous vote of the people; and that the county was entitled to have paid to it the cash value of the property turned over to the new company, and to have the same declared a first lien upon the road. On December 6, 1890, the construction company began foreclosure proceedings in the United States circuit court, and had a receiver appointed. On January 1, 1891, the county filed its amended bill, alleging that the transfer was upon conditions which were precedent to defendant's acquisition of any valid title; that the said company had not, and could not, comply with the conditions; and that the mortgagees had notice of the conditional ownership of the property, and were subordinated to the rights of the county as equitable owner. It also alleged that a certain person claimed a lien for work done on the property of the old company, admitted the liability of the county if the claim was valid, and asked that the said claimant be made a party to the suit. *Held,* that the controversy between the county and the construction company, relating to priority of liens, was so separate and distinct as to entitle the latter to a removal. *Safe-Deposit Co.* v. *Huntington,* 117 U. S. 280, 6 Sup. Ct. Rep. 733, distinguished.

In Equity. This action was originally brought in the state court by O. N. Foster, chairman, Sumner county, against the Chesapeake & Nashville Railway Company, the Mississippi Valley Construction Company, and others, for a decree declaring null and void the contract of the county with the defendant railway company, under which the latter was permitted to take charge of the old Cumberland & Ohio road-bed, declaring the county entitled to the actual cash value of the said road-bed, declaring the same a lien upon the railroad of the said defendant, and for the appointment of a receiver, and for general relief. The action is now pending in this court on motions to docket, and to remand the cause.

*S. F. Wilson,* for complainant.

*Holmes Cummins* and *J. J. Turner,* for Chesapeake & N. Ry. Co.

JACKSON, J. Pending on motions of the Mississippi Valley Construction Company and other defendants to docket the cause, and of the complainant to remand the same to the chancery court of Sumner county, Tenn.

A brief outline of the material facts and history of the above-entitled suit will serve to present the questions involved in the pending motion. The Cumberland & Ohio Railroad Company was chartered in 1869 or 1870, under the laws of Tennessee and Kentucky, to construct a line of railroad from a point in Kentucky to Nashville, Tenn. Sumner county, under authority of law, subscribed $300,000 to the capital stock of the

Tennessee corporation, which was duly consolidated with the Kentucky corporation, and then became one company. After acquiring rights of way, completing portions of its line, and grading other portions, said company became insolvent, was unable to complete the enterprise, and ceased operations about 1875. Thereafter the Chesapeake & Nashville Railway Company was chartered under the laws of Kentucky and Tennessee as separate and distinct companies to construct and operate lines from a point on the Chesapeake & Ohio Railroad system in Kentucky to Nashville, Tenn., upon the most practicable route to connect said points. These two corporations were duly consolidated in December, 1884, under the same name, of the Chesapeake & Nashville Railway Company. Previous to the consolidation, the county of Sumner had appointed commissioners to negotiate a sale of the properties, franchises, etc., of the old Cumberland & Ohio Railroad Company, whose organization had been kept up by the election of directors chosen by its two principal stockholders,—Sumner county, Tenn., and Allen county, Ky. These negotiations resulted in the acquisition by the Chesapeake & Nashville Railway Company of all the rights, properties, and franchises of the Cumberland & Ohio Railroad Company, which were transferred and conveyed by the latter company to the former, by written contract, under date of May 30, 1885, Sumner and Allen counties, by their duly-authorized agents, joining in the execution of the same. By the terms of the contract and conveyance the Chesapeake & Nashville Railway Company succeeded to all the rights, properties, and franchises of the old Cumberland & Ohio Railroad Company, and was authorized to enter into the possession and take charge thereof as owner, and for the purpose of constructing a railroad from Gallatin to Scottsville, and making a continuous line of railway from Stanford, Ky., or from some suitable point on the Chesapeake & Ohio Railway system or road, connecting with said system, by a continuous line from said point above, through Scottsville and Gallatin, to Nashville, Tenn., and to be completed and running between Scottsville and Gallatin in 18 months from December 31, 1884. The Chesapeake & Nashville Railway Company, in consideration of the premises, contract, and conveyance, was to issue to Allen county, or whoever was entitled to receive the same, $53,297.90 of its capital stock, and to Sumner county it was to issue $76,359.93 of its capital stock. Said stock was to be issued to said counties "when all liens or incumbrances on the property and rights conveyed * * * are delivered, relieved, or discharged; but such liens or incumbrances referred to do not embrace any property not embraced in the warranty." The parties making the conveyance covenanted that they would warrant and defend the title to the properties and rights transferred "against all legal claims, rights, or equities; but this warranty does not extend beyond the amount or value of the stock issued to us, as above set out, or the property estimated by said engineers." The stock to be issued by the Chesapeake & Nashville Railway Company to said counties was based upon estimates of engineers as to the value of the properties, etc., transferred and conveyed. Under this conveyance the Chesapeake & Nashville Railway Com-

pany went into possession, and completed the line of road between Gallatin and Scottsville in 1886, but not within the 18 months from December 31, 1884, as stipulated in the contract. On the 15th of June, 1885, the Chesapeake & Nashville Railway Company executed a mortgage or trust-deed upon all its rights, properties, and franchises, including those acquired from the Cumberland & Ohio Railroad under the aforesaid conveyance, to R. T. Wilson, for the purpose of securing certain first mortgage bonds issued and to be issued by it. Said mortgage or trust-deed was duly recorded in Sumner county. The Chesapeake & Nashville Railway Company entered into a contract with the Mississippi Valley Construction Company to build its road, and to pay therefor in said bonds, secured by the mortgage to said Wilson, at $20,000 per mile. Under said contract the construction company proceeded with the building of the road so far as the same has been completed. On the 28th day of July, 1887, a supplemental agreement was made between said construction company and the Chesapeake & Nashville Railway Company, under and by virtue of which the rate of interest on said first mortgage bonds earned and to be earned by said Mississippi Valley Construction Company was changed from 6 per cent. to 5 per cent., and said construction company was to receive $25,000 per mile in bonds, bearing the reduced rate of interest, together with a certain portion of the Chesapeake & Nashville Railway Company's capital stock, and to secure these 5 per cent. bonds the railway company, on or about July 28, 1887, executed a new or additional mortgage upon its aforesaid properties, rights, etc., to the Metropolitan Trust Company of New York, which has also been recorded in the register's office of Sumner county.

On the 29th of September, 1887, the county of Sumner, by the chairman of its county court, filed its bill of complaint in the chancery court for said county against the Chesapeake & Nashville Railway Company alone, alleging that the Chesapeake & Nashville Railway Company had failed and refused to issue to said county the $76,359.93 of its capital stock, as provided in the contract and conveyance of May 30, 1885; that it had failed to complete the line of road between Gallatin and Scottsville within the 18 months stipulated; that the county of Sumner had no authority to transfer to the Chesapeake & Nashville Railway Company its stock in the old Cumberland & Ohio Railroad Company without the previous vote of the people of the county directing the same, and that said contract of May 30, 1885, was null and void as to said county; that, if mistaken in this, inasmuch as the Chesapeake & Nashville Railway Company had failed to build an independent road from Nashville to the connection designated in Kentucky, the county "was entitled to have paid to it the actual cash value of the property turned over to the Chesapeake & Nashville Railway Company, and to have the same declared a fixed and first lien upon the road, its franchises, etc., in this county," which cash value, as ascertained by the engineers selected to estimate the same, was stated to be $152,719.86. The prayer of the bill was "that a decree might be entered declaring the contract made by the county court of Sumner county with this defendant, (the Chesapeake & Nash-

ville Railway Company,) under which the defendant was permitted to enter upon and take charge of the old Cumberland & Ohio road-bed and work, null and void, ousting the defendant from the same in this county, as if this was an action of ejectment. If this cannot be done, declare that the county is entitled to the actual cash value of the property turned over to the defendants, with interest, and decree the same a lien upon the defendant company and upon the road and equipments in this county." There was a prayer for general relief, and for the appointment of a receiver to take charge of and to operate the road of defendants.

The application for the appointment of a receiver was acted upon, and denied by the chancellor, December 20, 1887, the court being of opinion that in the present "*status* of the litigation and the properties involved, and the relative rights of the parties litigant, as disclosed by the record, the application should not be granted, and doth therefore disallow the same;" but this action of the court was not to prejudice or deny the right of complainant to renew the application for a receiver at any time thereafter deemed proper. Demurrers, interposed by defendant, were at the same time overruled, and defendant thereupon answered, and the cause came on for hearing, when the chancery court decreed as follows:

"*First.* That the Chesapeake and Nashville Railway obtained a good title to the corporate properties of the Cumberland and Ohio Railroad Co. in Sumner county,—that is, its franchises, road-beds, grading, masonry, rights of way, etc., specified in the contract filed with the pleadings,—conditional upon the performance by it of the terms of said contract.

"*Second.* That the stock specified therein to be issued to Sumner county in consideration of the transfer of said properties to it, did not constitute the only consideration inducing the parties to enter into said contract, but that one of the main considerations to the county of Sumner, which it has the right to enforce, was the obligation therein assumed by the defendant company to construct an independent competing line of railroad from Nashville, Tenn., via Gallatin, Tenn., Sumner county, and Scottsville, Allen county, Ky., to the designated connection therein specified in the state of Kentucky; and that Sumner county has the right to maintain this bill to enforce a performance of this part of the contract, as well as that in respect to the issuance of the stock specified under the conditions of the contract.

"*Third.* That said contract does not convey the stock of Sumner county in the Cumberland and Ohio road to the defendant company, but is a conveyance by the old C. & O. road, reorganized for that purpose, of its corporate properties as before stated, and assented to by the county as a stockholder therein, and hence is not obnoxious to the statute prohibiting counties from transferring or selling their stock in railroad companies without first submitting the proposition of sale to a vote of the people, and having their sanction thereto by the prescribed popular vote.

"*Fourth.* That the defendant's company did not complete its road between Gallatin, Tenn., and Scottsville, Ky., within the time prescribed by the contract, nor for some several months thereafter, but that time is not made of the essence of the contract on its face; and, as the county made no demand for a surrender by the defendant company at the time, and stood by and permitted the defendant to expend large sums in completing its road between these points after the expiration of the contract limit, complainant is not entitled to a forfeiture of said properties on that ground.

"*Fifth.* That the pleadings are in no shape to adjudicate the question as to

the validity of any mortgage or mortgages issued by the defendant company on its road in this county, and as to the rights or otherwise of the mortgagees or the county to the properties in this county, in the event of the failure of the defendant company to carry out said contract, and a forfeiture of its rights thereto in consequence; and this question is expressly not adjudicated, nor is the question of what the county would be entitled to recover in that aspect of the adjudication, nor is the question of the rights of any mortgagees adjudicated in respect to prior or other rights in respect to the county adjudication.

"*Sixth.* Under the unsatisfactory state of the proof as to the solvency of the defendant, and its ability and honest intentions to perform said contract in the respects herein indicated, the court orders and decrees that the bill be retained, to the end that it may, in a reasonable time, show its ability, willingness, and intention to perform said contract by the construction of a competing line of said railroad from and to the points specified in the contract, and for such further decree in respect thereto as under right and equity may appertain in view of developments."

From this decree the Chesapeake & Nashville Railway Company appealed to the supreme court, which, in December 1889, affirmed the same, on the ground that neither party had assigned any errors therein, and remanded the cause for further proceedings. If said decree can be properly regarded as a final decree, it will be observed that it settles several questions presented by the bill against the complainant's contention, and leaves others open for future determination. It settles the point that the contract of May 30, 1885, was not null and void as to Sumner county; that said county could not avoid it, or claim a forfeiture of the properties conveyed to the Chesapeake & Nashville Railway Company because of the latter's failure to complete the road between Gallatin and Scottsville within the time specified; that the conveyance was made by the old Cumberland & Ohio Company, reorganized for the purpose, and only assented to by Sumner county, a stockholder of the Cumberland & Ohio Company, and that the Chesapeake & Nashville Railway Company obtained a good title to the corporate properties of the Cumberland & Ohio Company, conveyed and transferred, subject to the conditions of its performing the terms of the contract in constructing a competing line of road between the points designated. Neither the decree nor the contract specifies any time within which the completed and competing line is to be constructed. The questions left open are the county's right to the issuance of the $76,359.93 of stock in the Chesapeake & Nashville Railway Company upon the conditions mentioned in the contract, and the rights of the county, in the event of the failure of the Chesapeake & Nashville Railway Company to carry out said contract, and a forfeiture of its rights thereunder in consequence.

The cause having been remanded to the chancery court of Sumner county, the complainant, on the 10th of December, 1890, again applied for the appointment of a receiver, but no action was taken thereon, it being made to appear to said court that the United States circuit court for the middle district of Tennessee and of Kentucky had previously thereto, in the suit of the Mississippi Valley Construction Company against the Chesapeake & Nashville Railway Company *et al.*, to foreclose the mortgages aforesaid, and wind up said corporation as insolvent, appointed a

receiver of all the properties, etc., of said railway company. The suit of the Mississippi Valley Construction Company was commenced in said circuit court on the 6th of December, 1890, and said receiver was appointed December 8, 1890, and immediately thereafter took possession, as the officer of the court, of all the property of the Chesapeake & Nashville Railway Company, and still holds the same under the foreclosure proceedings still pending in said circuit courts of the United States.

On January 1, 1891, complainant filed an amended and supplemental bill in the chancery court of Sumner county, which, after reciting or referring to the proceedings under the original bill, which were asked to be taken as part of the amended and supplemental bill, made new defendants, and raised new questions not involved or decided in the decree of the chancellor. The new parties defendant were R. T. Wilson, trustee under the 1885 mortgage of the Chesapeake & Nashville Railway Company; the Metropolitan Trust Company, trustee under the mortgage of 1887; C. P. Huntington, R. T. Colburn, A. A. Lowe, George Bliss, C. A. Lowe, Eugene Zimmermann, and the Mississippi Valley Construction Company, the Cumberland & Ohio Railroad Company, Allen county, Ky., J. C. Rodemer, and Echols, the receiver of this court. The theory of this amended and supplemental bill is that Sumner county, by virtue of its being the sole stockholder in the old Cumberland & Ohio Railroad Company, was the equitable owner of all the rights and properties of said company in that county; that the transfer of said rights and properties to the Chesapeake & Nashville Railway Company was made upon conditions which were conditions precedent to its acquisition of any valid title thereto; that said Chesapeake & Nashville Railway Company had not complied, and could not, and did not intend to, comply with the same; that it had no right, title, or interest in the properties of the old Cumberland & Ohio Company which it could mortgage, so as to place its mortgagees "in a position superior to or prior to the rights and interests of Sumner county; that the mortgagees under the mortgages or trust-deeds of 1885 and 1887 hold said properties in subordination to the rights of Sumner county, as the equitable owner thereof; that the Mississippi Valley Construction Company took the first mortgage bonds of the Chesapeake & Nashville Railway Company, if any it has, with actual and constructive notice of the conditional ownership of said properties by the Chesapeake & Nashville Railway Company, and never acquired any right, title, or interest, legal or equitable, in said properties of the old Cumberland & Ohio road in Sumner county, by virtue of said mortgages, prior, superior, or equal to those of Sumner county."

The individual defendants, Huntington, Colburn, Bliss, Zimmermann, and the two Lowes, are described as members of or corporators of the Mississippi Valley Construction Company, and holders of said bonds issued by the Chesapeake & Nashville Railway Company, and secured by the aforesaid mortgages, executed by it to Wilson and the Metropolitan Trust Company. The amended bill alleges that J. C. Rodemer's claim was for work done on the old Cumberland & Ohio Railroad in Sumner county and Allen county; that said claim is in litigation in the chan-

cery court of Sumner county, between the Chesapeake & Nashville Railway Company and said Rodemer, the latter claiming "a right and title to a large portion, if not all, of the old railroad properties of the old Cumberland & Ohio road under a decree of your honor's court, rendered some years since." It is further alleged that, if said Rodemer's claim is valid, "it is equally a charge against the railroad bed in Allen county, Kentucky;" and the bill asks that said Rodemer and Allen county, Ky., may be brought before the court "for a proper settlement and adjustment of this claim of Rodemer." No allegations are made, or relief sought, against Echols, the receiver of this court.

The prayer for relief is that complainant or the county of Sumner may have "a decree definitely establishing his insistence, to-wit, that the Chesapeake & Nashville Railway, having failed to carry out the contract, if the Mississippi Valley Construction Company, the Metropolitan Trust Company, R. T. Wilson, or any holder or holders of bonds issued by the Chesapeake & Nashville Railway Company, seek to hold the properties of the old Cumberland & Ohio road in Sumner county, they must first pay Sumner county what it is and was actually worth at the time it was taken charge of by the Chesapeake & Nashville Railway Company, —that value being $156,000, or $190,000, with interest thereon,—establish her equitable ownership as the only stockholder of the old Cumberland & Ohio in Tennessee to the properties of that corporation as a Tennessee corporation, and, as that corporation is defunct, and has abandoned its enterprise, and is insolvent, if necessary, wind it up as an insolvent and defunct corporation." There was also a prayer for general relief.

The complainant, having filed said amended and supplemental bill in the state court, thereafter, on the 9th of January, 1891, presented to, and, after leave granted, filed, in this court his or its petition or bill against the same defendants, setting out fully the proceedings had and taken under the original and amended and supplemental bills, which were made exhibits; and therein claimed and asserted substantially the same rights as claimed in the state suit, and asked, in view of the premises and the action and decrees of the state court cited, "to file this petition or bill herein, and for process, publication, or the proper notification required by the rules of this court to be issued, made, and served upon the defendants named, or such of them as do not enter their appearance, waiving the same;" and this court was further asked to grant complainant the right and permission sought to make the defendants named defendants to the suit aforesaid, pending in the chancery court of Sumner county, and to annul, vacate, or modify the action of this court "appointing defendant Echols receiver of the properties, to the end that the chancery court of Sumner county may, if it see proper, effectuate its decrees, appoint a receiver of the properties involved in the litigation before it, or take such action in the premises as may appertain of right and law, in view of the facts; and your honor is asked to grant such other, different, general, and special relief as may appear of right, in view of the facts, and so your complainant will ever pray." Notice of

this bill or petition was given the parties named as defendants, and they appeared by counsel. Upon consideration, this court denied the application to discharge the receiver, as well as the application for its leave to have said receiver made a party to complainant's litigation in the state chancery court. In other respects said bill is still pending in this court.

The defendants Wilson, the Metropolitan Trust Company, the Mississippi Valley Construction Company, Bliss, Huntington, Colburn, A. A. and C. A. Lowe, and Eugene Zimmermann appeared in the state suit, and in due time petitioned for the removal of the same to this court. Their petitions are in due form, and contain all the necessary averments as to diverse citizenship and residence of themselves and complainant, and of the amount involved, to entitle them to the removal sought, if the case made by the pleadings presented a separable controversy between them and the complainant. Good and sufficient bond was tendered with their petition. The state court declined to order the removal. The petitioners now present the record, and move this court to docket the case as properly removable, and, in legal effect, removed, by the steps taken; and the complainant, conceding that the question of removability of the suit is for the final decision of the federal courts, appears in resistance of said motion, and on his part moves to have the cause remanded. The petitioners also ask, in the event the suit is not removed or removable, that complainant be restrained from its further prosecution as to them in the state court, inasmuch as this court has the custody, by its receiver, of the property, and can adjust the rights and equities of all parties interested therein, etc.

It is perfectly clear that neither the orginal, nor amended bill, makes any case of joint liability against the Chesapeake & Nashville Railway Company and the petitioners for removal, either in contract or in tort, so as to bring the suit within the principle of the decisions that the claim of a joint liability in either contract or tort is not made a severable or separable controversy by reason of separate defenses, under the removal act. It is also clear that the ejectment feature of the original bill, which sought to oust the Chesapeake & Nashville Railway Company from the possession of and right to the properties of the old Cumberland & Ohio Company is now out of the case by the decree of the chancellor, and that complainant is now confined to the alternative prayer for relief, viz., the claim to be paid the value of said properties in Sumner county at the date they were turned over to the Chesapeake & Nashville Railway Company, in the event of its failure or refusal to perform the contract by constructing a completed line of road between the points designated. It is nowhere alleged in the pleadings, nor claimed in the prayers for relief, that the petitioners are liable for this alleged breach of contract on the part of the Chesapeake & Nashville Railway Company, or in any way responsible to complainant in damages or otherwise for the failure of the Chesapeake & Nashville Railway Company to perform its contract. The petitioners were not parties to said contract and the obligations therein assumed by either party, nor are they in any sense

privies thereto, under and by virtue of the mortgages or trust-deeds of 1885 and 1887, and their holding of the bonds of the Chesapeake & Nashville Railway Company, secured by said conveyances.  They may be considered at most as only privies in estate with the Chesapeake & Nashville Railway Company.  But in respect to complainant's claim to be compensated for the value of the Cumberland & Ohio Company's properties conveyed to the Chesapeake & Nashville Railway Company, the petitioners are in no way either necessary or proper parties to that controversy.  On that question the suit presents a separate controversy between the complainant and the Chesapeake & Nashville Railway Company.

In respect to the stock which the Chesapeake & Nashville Railway Company contracted to issue to Sumner county, and which the bill claims, while at the same time asking to be decreed the value of the Cumberland & Ohio properties conveyed, that is manifestly another matter of controversy, wholly between complainant, or Sumner county, and the Chesapeake & Nashville Railway Company, with which the petitioners have no connection, and as to which they are not even proper parties.  By the provisions of the contract of May 20, 1885, said stock of the Chesapeake & Nashville Railway Company to the amount of $76,-359.93 was to be issued to Sumner county, when all liens or incumbrances on the properties of the Cumberland & Ohio estimated, conveyed, and warranted were relieved and discharged.  The Chesapeake & Nashville Railway Company claims that the county of Sumner is not entitled to the issuance of said stock until all liens or incumbrances are relieved or discharged by said county, which, it is alleged, has not been done. The amended and supplemental bill discloses the fact that J. C. Rodemer, for work done in Sumner and Allen counties for the old Cumberland & Ohio, claims some lien upon or title to the properties conveyed to the Chesapeake & Nashville Railway Company, and that said Rodemer's claim is in litigation between him and the Chesapeake & Nashville Railway Company.  The complainant neither admits nor denies the validity of this Rodemer claim, but submits that, if the county is required by the contract to settle and discharge it, Allen county should be equally liable to contribute thereto.  The petitioners, not being creditors or mortgagees of the Cumberland & Ohio, have no interest in or connection with this branch of the suit; and the fact that Rodemer and the old Cumberland & Ohio Company are citizens and residents of Tennessee in no way affects or prejudices the right of the petitioners to a removal of the suit, if the pleadings present a separable controversy between the complainant and themselves.

What, then, is the controversy between complainant and petitioners? In substance and effect the complainant claims that the right of Sumner county to be compensated or paid the value of the Cumberland & Ohio properties conveyed and turned over to the Chesapeake & Nashville Railway Company (which is a controversy confined to said parties) should be declared a lien thereon, prior and superior to that held by petitioners under the mortgages of 1885 and 1887.

It is charged that the Mississippi Valley Construction Company had actual and constructive notices of said prior claim of the county when it entered into contractual relations with the Chesapeake & Nashville Railway Company, and acquired the latter's mortgage bonds. This is denied by the Mississippi Valley Company. The other petitioners are not charged with such notice. But, whether so charged or not, the controversy between the complainant and .petitioners is manifestly one as to the priority of liens in respect to their several claims against the property of the Chesapeake & Nashville Railway Company; and, in the opinion of the court, presents a separable controversy, such as entitled the petitioners to a removal of the suit.

The special prayer of the amended and supplemental bill, asking that, if petitioners "seek to hold the properties of the old Cumberland & Ohio road in Sumner county, they must first pay Sumner county what it is and was actually worth at the time it was taken charge of by the Chesapeake & Nashville Railway Company,—that value being $156,000, or $190,000, with interest thereon, with the costs,"—so far from conflicting with, rather supports this conclusion. But if that prayer was intended to claim a joint liability as against the petitioners, the bill contains no allegations and presents no case to warrant or lay the foundation for this relief as against them, and it cannot be allowed to interfere with or prevent them from removing the suit. It is urged on behalf of complainant that the petitioners' right to remove this cause is controlled by the decision of the supreme court in the case of *Safe-Deposit Co.* v. *Huntington,* 117 U. S. 280, 6 Sup. Ct. Rep. 733. In that case Huntington, having obtained a judgment against the Scioto Valley Railroad Company for a large amount, caused execution to issue thereon, and levied upon the railroad, rolling stock, and other property of the company, all of which was covered by several prior mortgages. Huntington then began suit in the court of common pleas of Scioto county, "the object of which was to marshal the liens, and obtain a sale of the property, free of incumbrance, to pay his judgment, after satisfying all prior claims; and in the mean time he had a receiver appointed." To this suit all the several lienholders or trustees under the different mortgages were made parties. The Fidelity Insurance Company, as one of the mortgagees, answered, claimed its mortgage to be a first lien, and petitioned for the removal of the cause to the circuit court of the United States, on the ground that there was in the suit a controversy which was wholly between citizens of different states, to-wit, between itself, a citizen of Pennsylvania, and the plaintiff, Huntington, and all the defendants except petitioner, citizens of states other than Pennsylvania. It was held by the supreme court that the insurance company was not entitled to remove the suit. Why? Because Huntington's suit was a creditor's bill to subject incumbered property to the payment of his judgment by a sale and distribution of the proceeds among lienholders according to their respective priorities. This was held to present a single cause of action to reach the surplus or equitable interest of the judgment debtor in the incumbered property. It does not appear that Huntington contested

or in any way disputed the priority of the insurance company's mortgage or lien. He was compelled to bring all prior lienholders before the court in order to reach and subject to the payment of his judgment his debtor's equitable assets, consisting of the surplus proceeds of the incumbered property, after satisfying all prior liens. This object and purpose of the suit involved no separate controversy with any lienholder. The complainant's suit is in no sense a creditor's bill against the Chesapeake & Nashville Railway Company to marshal liens upon its property, obtain a sale thereof free of incumbrance, and distribution of the proceeds among lienholders according to their respective priorities. The complainant, on the contrary, directly contests and disputes the petitioners' priority of liens, claims such priority for Sumner county to the extent of the value of the properties conveyed by the Cumberland & Ohio Company, with the consent of said county, to the Chesapeake & Nashville Railway Company. The whole object, scope, and purpose of complainant's suit is essentially different from that of the plaintiff in the *Safe-Deposit Co. Case,* on which reliance is placed to show that petitioners have no right to remove. Complainant does not even seek to have the Chesapeake & Nashville Railway Company wound up as an insolvent corporation. It is sought to have the old Cumberland & Ohio Company wound up as insolvent, but with that corporation petitioners have no connection or concern.

Looking to the substance and legal bearing of complainant's pleadings, the court is of opinion that the suit involves several distinct controversies; that one of said controversies is with the petitioners, and those represented by them; that this controversy with petitioners is so distinct and separable as to entitle petitioners to remove the cause; and that by their petitions the suit was removed to this court. The conclusion of the court, accordingly, is that petitioners' motion to docket the suit in this court should be granted, and that complainant's motion to remand the same should be denied, and it is so ordered.

In view of the conclusions thus reached, it is not deemed necessary to consider and pass upon the application of petitioners to restrain the complainant from the further prosecution of the suit against them in the state court. It is, however, proper to observe that this court, having lawfully acquired the first custody of and jurisdiction over the property of the Chesapeake & Nashville Railway Company in the suit of the Mississippi Valley Construction Company against said railway company and the trustees under said mortgages of 1885 and 1887, in which it is sought not only to foreclose said mortgages, but to have said Chesapeake & Nashville Railway Company adjudged insolvent, and to wind it up as such, have its properties, franchises, etc., sold, and the proceeds distributed among all creditors, is clearly entitled to administer the relief sought, to adjudicate the respective rights and interests of all claimants, to sell the properties involved free of incumbrance, and distribute the proceeds among those entitled, according to their relative priorities; and that its decree in the premises, independent of the removal aforesaid of complainant's suit from the state court, or of an injunction re-

straining its further prosecution, must and will prevail over any contrary or different decree which might or could be rendered in said state court, proceeding under the complainant's amended and supplemental bill. This is especially so, as by an amended bill filed in July, 1891, the Mississippi Valley Construction Company has made the complainant a defendant in this suit, pending in this court. All parties, by the decree of this court, to the suit in this court, will be concluded, without regard to whether the state suit be removed or enjoined or not.